**Reversed and Remanded and Majority and Dissenting Opinions filed February 28, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-10-01000-CV
_____

### ARLINGTON HOME, INC., Appellant

### V.

### PEAK ENVIRONMENTAL CONSULTANTS, INC. D/B/A LIVE OAK ENVIRONMENTAL CONSULTANTS AND SANDION LTD. D/B/A COLDWELL BANKER UNITED REALTORS, Appellees

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2006-47620**

## DISSENTING OPINION

I agree with the majority opinion as to the attorney fee issues for Coldwell Banker and the requirement that Live Oak segregate its attorney's fees if Live Oak ultimately prevails. I also agree with the majority opinion as to Arlington's negligence claim. I disagree, however, with the majority's disposition of Arlington's negligent misrepresentation and DTPA claims. I would therefore continue to analyze the other

grounds underlying the JNOV.   Accordingly, I respectfully dissent.

## A.       The email is an actionable misrepresentation.

The majority concludes that the following email from Live Oak is either true as a matter of law or contains no actionable misrepresentations and will not support either a negligent misrepresentation claim or a DTPA misrepresentation claim.  I disagree.  The email at issue reads as follows:

> Just received the lab results for the subject property.  It passed.  No Stachybotrys ("toxic black mold") or Chaetomium spores; these are the primary indicators of a moisture problem.

> The interpretation of the lab data coupled with the observations made at the time of the inspection indicate no significant mold amplification expected to pose a threat to the subject property or its occupants.

> A complete written report, with copies of the laboratory results will be issued.

Martens sent this email to Young.   Young forwarded the email to Harres.   Harres relied on the email and did not back out of the purchase of the property.  The majority parses the email into three representations when it really contains four.  The four representations are:

1. It passed.

2. No Stachybotrys ("toxic black mold") or Chaetomium spores.

3. These [spores] are the primary indicators of a moisture problem.

4. No significant mold amplification expected to pose a threat to the subject property or its occupants.

The only true representation was that there were no Stachybotrys or Chaetomium spores shown in the samples.   In fact, the house did contain Stachybotrys spores, based on testing done later.  There is evidence in the record to support a jury verdict that the remaining three representations are false.

2

The majority summarily concludes that representations one and four "do not rise to the level of existing fact," citing *Transport Insurance Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995). In *Faircloth,* the plaintiff sued an insurance company for representing that a settlement offer was "top dollar." *Id*. at 276. While the court did state that "a pure expression of opinion will not support an action for fraud," it qualified this statement, adding that "[w]hether a statement is an actionable statement of 'fact' or merely one of opinion depends on the circumstances in which a statement is made." *Id.* The relevant circumstances include the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or future. *Id.* An opinion may also be treated as an actionable statement of fact when the opinion is based on or buttressed by false facts. *Id*. at 277. Or it may be treated as an actionable basis of fact if it is made by one who should know another party is justifiably relying on the speaker's superior knowledge. *Id*.

The Supreme Court returned to this issue in a more recent opinion, *Italian Cowboy Partners, Ltd. v. Prudential Insurance Co. of America*, 341 S.W.3d 323 (Tex. 2011). In *Italian Cowboy*, the court analyzed a property manager's statement that there had been "no problems" with the building and that the building was in "perfect condition." *See id.* at 328. The court concluded that those statements were actionable misrepresentations of fact, rather than mere opinions. *Id.* at 338. Among the factors that the court reviewed were the superior knowledge of the property manager, that the facts underlying the opinion were not equally available to both sides, and that the statement was intertwined with other true facts. *Id.* at 338–39.

Using these principles, I would conclude that the email is an actionable misrepresentation of existing fact. As to the first representation—"it passed"—this is not simply an opinion but a statement of fact. When a student takes a class on a pass/fail basis and receives a passing grade, we know that the professor has established criteria that a student must meet, showing mastery of the course, before the student receives a passing

3

grade. It is not a mere opinion of the professor. When a lawyer passes the bar, she has met objective criteria to become licensed. Similarly, a house passes an inspection because it meets certain objective criteria.

As to the third and fourth representations, these are actionable statements of opinion under *Italian Cowboy*. Martens had superior knowledge while both Young and Haress did not. Young had never dealt with a home with mold issues at the time of this sale, nor had Haress. Martens knew that the potential buyer would rely on his statements and Haress did in fact rely on the email. Martens knew that the buyer still had the ability to back out of buying the house. Although Martens did not remember whether he knew of the potential health issues for Ms. Kaki, Young testified that he told Martens that the occupant of the house had health issues. Martens characterized the email as a "positive recommendation" for buying the house. Martens's email contained some true facts—that there were no Stachybotrys ("toxic black mold") or Chaetomium spores present in the house based on his air samples—and stated that Martens had inspected the house and reviewed the air samples.

There is some evidence in the record to support the jury verdict that the representations in the email are false. Industrial hygienist Robert Reda testified, based on the levels of Aspergillus mold in the Live Oak samples, that the home did not pass its inspection and that the samples showed a potential mold problem. He concluded that the email was extremely misleading, not only for what it said but for what it did not include. Reda testified that there was mold amplification expected to cause a threat to the property or its occupants. Reda and two other experts testified that the mold existed in the house at the time of the inspection and needed to be removed—in other words, it was a threat to the property. While no one contended that Ms. Kaki's health was actually at risk, Martens identified studies that concluded that Aspergillus mold is the second most common mold requiring hospitalization in the United States.

4

**B. The DTPA claim, as submitted to the jury, included both affirmative misrepresentations and a failure to disclose.**

The majority opinion focuses on only one of four DTPA claims submitted to the jury—failure to disclose—and concludes that there is no evidence that Live Oak intended to induce Arlington into the transaction. The DTPA question listed the following four types of false, misleading or deceptive acts or practices:

(1) representing that the real estate in question had or would have characteristics that it did not have;

(2) representing that Gary Martens had or would have qualifications that he did not have;

(3) representing that the real estate in question is or will be of a particular quality if it, was of another;

(4) failing to disclose information about the real estate in question that was known at the time of the transaction *with the intention to induce* Arlington Home into a transaction it otherwise would not have entered into if the information had been disclosed (emphasis added).

As discussed above, in my opinion the email was an actionable misrepresentation, supporting a "yes" answer under either (1) or (3) above.[1] Arlington was not required to prove that the affirmative misrepresentation induced him into buying the house. It only had to prove that it relied on the misrepresentation to its detriment. Haress testified that he did not back out of the purchase of the property because it had passed inspection—in other words, he relied on the email to Arlington's detriment.

The majority opinion confuses the "intent to induce" (by Live Oak) requirement in the failure-to-disclose issue (sub-point (4)) with the reliance requirement for affirmative misrepresentations. The majority then summarily holds that there was no "direct

---

[1] There is no evidence that Live Oak represented anything about Martens qualifications to Haress.

5

evidence" of the intent to induce by Live Oak, citing *Red Roof Inns, Inc. v. Jolly*, No. 14-10-00344-CV, 2011 WL 6288147, at *8 (Tex. App.—Houston [14th Dist.] Dec. 15, 2011, no pet. h.).  In *Red Roof*, the court did not hold[2] that there must be direct evidence of the "intent to induce" requirement, but instead rejected an argument that the court should presume that a material non-disclosure was made with an intent to induce the transaction. *See id.*  Nothing in *Red Roof* should be construed to hold that circumstantial evidence of the "intent to induce" requirement is insufficient.  Just as intent to defraud is not usually susceptible to direct proof but can be shown through circumstantial evidence, intent to induce can also be shown circumstantially.  *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 305 (Tex. 2006); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

Because I believe that the jury could have properly answered "yes" under either sub-point (1) or (3) above, I do not reach the issue of whether there was legally sufficient circumstantial evidence that Live Oaks's failure to disclose information was intended to induce Arlington to complete the purchase of the house.

Because the majority opinion has incorrectly analyzed the negligent misrepresentation and DTPA misrepresentation issues and has incorrectly imposed a new burden of proof as to the DTPA failure-to-disclose issue, I respectfully dissent.

/s/     Tracy Christopher
Justice

Panel consists of Chief Justice Hedges and Justices Christopher and McCally.  (Hedges, C.J., majority).

---

[2] *Red Roof* was a three-way split decision of this court, with only one justice advancing this proposition of law.

6